Kathleen EVANS, as Conservator of Jessica EVANS, a protected person, Plaintiff–Appellant,

v.

LEDERLE LABORATORIES, Link Clinic, and O. Sharma, Defendants–Appellees.

No. 98–1293.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 25, 1998.

Decided Feb. 3, 1999.

Joseph Phebus, Phebus & Winkelmann, Urbana, IL; Nancy J. Glidden (argued), Phebus & Winkelmann, West Chester, PA, for Kathleen Evans.

Michael A. Pollard (argued), Thomas F. Bridgman, Baker & McKenzie, Chicago, IL; Peter W. Brandt, Livingston, Barger, Brandt & Schroeder, Bloomington, IL, for Lederle Laboratories.

Richard C. Hayden (argued), Craig & Craig, Mattoon, IL, for Link Clinic and O. Sharma.

Before CUDAHY, COFFEY and KANNE, Circuit Judges.

CUDAHY, Circuit Judge.

During the first year of her life, Jessica Evans received three doses of a diphtheria,

pertussis and tetanus (DPT) vaccine manufactured by Lederle and administered by Sharma, a physician, at the Link Clinic. Several years later, Jessica's mother, Kathleen Evans, filed suit on her behalf seeking to recover damages for injuries allegedly caused by the vaccine. A confusing chronology of litigation ensued culminating in this appeal.

On August 14, 1985, Evans sued the Link Clinic and Sharma in state court. That action was voluntarily dismissed without prejudice to make way for a diversity action filed in the district court on June 8, 1990, naming as defendants Lederle, the Link Clinic and Sharma. On October 1, 1990, Evans filed suit in the Court of Claims seeking an award under the National Childhood Vaccine Injury Act (the "Vaccine Act"), 42 U.S.C. § 300aa–1 *et seq.* That filing necessitated the voluntary dismissal of the pending diversity action. When the Court of Claims subsequently dismissed the Vaccine Act claim with prejudice, Evans went back to the district court and refiled the diversity action on February 28, 1995. The Link Clinic and Sharma moved to dismiss the claims against them pursuant to the Illinois saving statute which allows a plaintiff just one opportunity to refile an action that has been voluntarily dismissed. *See* 735 ILCS 5/13–217. The magistrate judge determined that the Illinois rule was preempted by the Vaccine Act and recommended that Evans be allowed to proceed with her action. But the district court rejected the magistrate judge's recommendation on the ground that the Illinois rule was not preempted. Applying the Illinois rule, the court dismissed the Link Clinic and Sharma from the case and subsequently granted Lederle's motion for judgment on the pleadings. We affirm.

## I.

 We review *de novo* the district court's decision to dismiss the Link Clinic and Sharma as defendants. A motion to dismiss is granted only if "it appears beyond doubt that the plaintiff can prove no facts sufficient to support [her] claim for relief, and the facts in the complaint are viewed in the light most favorable to the non-moving party." *Flenner v. Sheahan,* 107 F.3d 459, 461 (7th Cir.1997); *see also City Nat. Bank of Florida v. Checkers, Simon & Rosner,* 32 F.3d 277, 281 (7th Cir.1994). A motion for judgment on the pleadings is reviewed under the same standard as a motion to dismiss. *See Flenner,* 107 F.3d at 461; *Frey v. Bank One,* 91 F.3d 45, 46 (7th Cir.1996), *cert. denied,* 519 U.S. 1113, 117 S.Ct. 954, 136 L.Ed.2d 841 (1997). Thus, we also review the district court's decision to enter judgment on the pleadings in favor of Lederle *de novo* applying the same principles.

The Vaccine Act provides a no-fault compensation system for individuals harmed by childhood vaccines. The system involves a special procedure whereby a vaccine-injury plaintiff files a petition in the Court of Claims, naming the Secretary of Health and Human Services as respondent, seeking an award to be administered from a fund financed by a tax on vaccines. *See* 42 U.S.C. § 300aa–11 *et seq.* Recourse to the Court of Claims is mandatory as a general rule. *See* 42 U.S.C. § 300aa–11(a)(2)(A). However, a plaintiff, such as Evans, who was already in the throes of civil litigation when the Act came into effect was permitted but was not required to dismiss her civil action and bring a compensation claim under the Act.[1] *See Amendola v. Secretary, Dept. Health & Human Serv.,* 989 F.2d 1180, 1184 (Fed.Cir. 1993) (explaining the effect of the Act on pending litigation).

A curious feature of the Act is that filing a petition in the Court of Claims—whether mandatory or optional—does not signal the abandonment of traditional tort rights. Once proceedings in the Court of Claims have run their course, the vaccine-injury plaintiff is allowed to jump ship and initiate or resume a civil action.[2] Congress thus created a bias in

---

1. The Act provides that such a plaintiff "may, at any time within 2 years after the effective date . . . or before judgment, whichever occurs first, petition to have such action dismissed without prejudice or costs and file a petition [in the Court of Claims]." 42 U.S.C. § 300aa–11(a)(5)(A) (as amended in 1989).

2. Specifically, the Act provides that once the Court of Claims has entered judgment, the peti-

favor of the federal compensation scheme by requiring vaccine-injury plaintiffs to exhaust the remedy under the Act before resorting to civil litigation. The result is "a new remedial system that interacts in a complicated way with traditional tort lawsuits." *Schafer v. American Cyanamid Co.*, 20 F.3d 1, 3 (1st Cir.1994). It is in sync with this *pas de deux* between Vaccine Act claims and conventional lawsuits that we must hop in deciding this appeal.

■ Evans's original diversity action was pending in the district court when the Vaccine Act came into effect. She exercised her option to proceed under the Act and, having voluntarily dismissed the diversity action, filed a petition in the Court of Claims on October 1, 1990. The petition was dismissed with prejudice pursuant to a joint stipulation.[3] Evans then elected to return to the district court and filed the present diversity action.[4] She advances two principal arguments—essentially a reiteration of the magistrate judge's view—in support of her bid to maintain that action. First, Evans contends that the Illinois saving statute is preempted by the Vaccine Act and therefore cannot operate to bar her suit. Alternatively, Evans argues that the refiling of her diversity action does not offend the Illinois rule.

## II.

■ In determining whether a federal statute preempts state law, "our ultimate task is to ascertain the intent of Congress." *American Agric. Movement, Inc. v. Board of Trade*, 977 F.2d 1147, 1154 (7th Cir.1992).

We have noted that the Act restricts but does not eliminate the exercise of traditional tort rights. In fact, the Act not only recognizes the possibility of civil actions but goes a step further and declares that "[s]tate law shall apply to a civil action brought for damages for a vaccine-related injury or death." 42 U.S.C. § 300aa–22(a). Nevertheless, Evans contends that Congress expressly preempted the Illinois saving statute by virtue of the following provision:

> No State may establish or enforce a law which prohibits an individual from bringing a civil action against a vaccine manufacturer for damages for a vaccine-related injury or death if such civil action is not barred by this part.

42 U.S.C. § 300aa–22(e). Evans advocates a broad construction of this provision that would preclude any state rule that operates to prohibit a civil action against a vaccine manufacturer. Since the Illinois saving statute has this effect, Evans asserts that the rule cannot be applied consistent with the Act. The district court rejected this argument and held that § 300aa–22(e) does not extend to state statutes of limitations including the Illinois saving statute. Thus, before addressing whether Congress intended to preempt state statutes of limitations, we must first clarify whether the saving statute's one-refiling rule is properly classified as a rule of limitation.

The Illinois statute of limitations does not expressly bar two or more refilings of a suit. Rather, the one-refiling rule has developed

tioner must elect either to accept the award and formally abandon his or her tort rights or to reject the award and proceed by way of civil action. *See* 42 U.S.C. §§ 300aa–11(a)(2)(A)(i) & 300aa–21(a).

3. The fate of the petition is something of a mystery. The stipulation itself calls merely for the dismissal of Evans's claim with prejudice "for reasons addressed during a conference" with a special master. *See* Appellant's Br. at A–24. Defendants maintain that Evans's petition was time-barred because it should have been filed within two years of the effective date of the Act, October 1, 1988. Evans filed her petition on October 1, 1990, and, according to defendants, missed the deadline by a day. Evans keenly disputes this contention and explains the dismissal as a strate-

gic decision motivated by differences in the type of proof required to sustain her claim in the district court as opposed to the Court of Claims.

4. Lederle questions whether Evans had a right of election in these circumstances. The Act allows a vaccine plaintiff to bring a civil action where the Court of Claims "has issued a judgment ... on [the] petition." 42 U.S.C. § 300aa–11(a)(2)(A)(i)(I). Lederle contends that the Court of Claims never issued a "judgment" in this case. On its face, this provision does not require a judgment on the merits. Rather, we read the term "judgment" to connote a final disposition of a petition by the Court of Claims. Thus, we take the view that the dismissal of Evans's petition with prejudice triggered her right of election.

as a judicial gloss on the saving statute which provides in relevant part:

> Reversal or Dismissal. In the actions specified in Article XIII of this Act or any other act or contract where the time for commencing an action is limited, if judgment is entered for the plaintiff but reversed on appeal, or if there is a verdict in favor of the plaintiff and, upon a motion in arrest of judgment, the judgment is entered against the plaintiff, or the action is voluntarily dismissed by the plaintiff, or the action is dismissed for want of prosecution, or the action is dismissed by a United States District Court for lack of jurisdiction, then, whether or not the time limitation for bringing such action expires during the pendency of such action, the plaintiff, his or her heirs, executors or administrators may commence a new action within one year or within the remaining period of limitation, whichever is greater, after such judgment is reversed or entered against the plaintiff, or after the action is voluntarily dismissed by the plaintiff, or the action is dismissed for want of prosecution, or the action is dismissed by a United States District Court for lack of jurisdiction.

735 ILCS 5/13–217.[5] The section is a saving provision "which allows a plaintiff to refile a cause of action if its prior disposition was based on the reasons outlined in the statute." *Timberlake v. Illini Hosp.*, 175 Ill.2d 159, 221 Ill.Dec. 831, 676 N.E.2d 634, 636 (1997). But while the one-year grace period is a boon for plaintiffs, Illinois courts have consistently held that the section permits no more than one refiling within that period. *See id.* ("[section 13–217] was not intended to permit multiple refilings of the same action"); *Flesner v. Youngs Development Co.*, 145 Ill.2d 252, 164 Ill.Dec. 157, 582 N.E.2d 720, 720 (1991) ("We interpret the language of section 13–217 as providing for one and only one refiling regardless of whether the applicable statute of limitations has expired."); *Gibellina v. Handley*, 127 Ill.2d 122, 129 Ill.Dec. 93, 535 N.E.2d 858, 864 (1989) ("While a [voluntary dismissal] motion in conjunction with

section 13–217 may protect the right of a plaintiff to have a decision in the particular case made on the merits of the claim by potentially permitting "two bites of the apple" when the first bite turns sour, the statutory scheme does not allow a third bite."); *Gendek v. Jehangir*, 119 Ill.2d 338, 116 Ill. Dec. 230, 518 N.E.2d 1051, 1053 (1988) (for the same proposition). The first filing is a reference point for statute of limitations purposes. Thus, the one-refiling rule operates as an integral part of the saving statute which courts have characterized as a rule of limitation. *See Reyes v. Court of Claims of State of Illinois*, 299 Ill.App.3d 1097, 234 Ill.Dec. 58, 702 N.E.2d 224, 230 (1998) ("This 'savings statute' enumerates the circumstances under which the statute of limitations for certain actions may be extended."); *Andrews v. Heinold Commodities, Inc.*, 771 F.2d 184, 186 (7th Cir.1985) ("The borrowing of a state statute of limitations includes the state's tolling doctrines, which suspend the application of the statute of limitations in prescribed situations."); *Cook v. Starling*, 104 F.R.D. 468, 470 (N.D.Ill.1985) ("Section 13–217 . . . is part of the chapter titled 'Limitations,' and is part and parcel of Illinois' total statute of limitations scheme . . . ."). And we endorse that characterization for the purposes of the present appeal.

The issue then is whether Congress intended to preempt state statutes of limitations including the Illinois one-refiling rule. Evans argues that the Vaccine Act preempts any state rule—whether substantive or procedural—that bars civil actions. The language of § 300aa–22(e) supports this construction insofar as it provides that "[n]o State may establish or enforce a law which prohibits an individual from bringing a civil action . . . ." However, defendants offer a less expansive reading of the same language that suggests a more modest preemptive effect. They assert that the term "law," as it appears in § 300aa–22(e), refers only to a state's substantive law and does not extend to procedural rules or statutes of limitation. From this perspective, Congress intended to

---

5. This statutory language was amended prospectively in 1995 by P.A. 89–7 § 15 (eff.Mar. 9, 1995) which the Illinois Supreme Court subsequently held to be unconstitutional in its entirety. *See Best v. Taylor Machine Works*, 179 Ill.2d 367, 228 Ill.Dec. 636, 689 N.E.2d 1057, 1104 (1997).

preempt only direct state prohibitions on civil actions that would override the Act's interplay between the federal compensation scheme and traditional tort rights; thus, Congress was not concerned with incidental state rules regulating the time and manner for the bringing of civil actions—even though those rules might restrict or actually bar proceedings. Reasonable minds could differ as to which of the proffered interpretations is correct. Since the plain language of § 300aa–22(e) is susceptible to inconsistent interpretations as to whether the Act preempts state statutes of limitation, we look to other indicia of statutory intent. *See United States v. Thomas,* 77 F.3d 989, 991 (7th Cir.1996) ("A court may look beyond the plain meaning of a statute when the result it apparently decrees is difficult to fathom or where it seems inconsistent with Congress' intention.") (quoting *Public Citizen v. United States Dept. of Justice,* 491 U.S. 440, 454–55, 109 S.Ct. 2558, 105 L.Ed.2d 377 (1989)).

The view that state statutes of limitation are not preempted finds support within the legislative scheme. The Act contemplates the application of state statutes of limitation where a petitioner elects to institute civil proceedings after judgment in the Court of Claims. *See* 42 U.S.C. §§ 300aa–16(c) (Statutes of limitation are tolled during the pendency of a petition); and 300aa–21(c) (Once a petitioner has elected to file a civil action, any subsequent civil action "shall ... be brought within the period prescribed by limitations of actions under State law applicable to such civil action."). Indeed, common sense suggests that if state statutes of limitation were preempted—and not replaced by federally prescribed limitations—vaccine-injury plaintiffs would have extraordinary freedom to commence lawsuits at a time and in a manner of their own choosing. This result would be contrary to an important federal purpose underlying the Act, namely, "to free manufacturers from the specter of large, uncertain tort liability, and thereby keep vaccine prices fairly low and keep manufacturers in the market." *Schafer,* 20 F.3d at 4 (citing legislative history); *see also Pennsylvania*

*Dept. of Public Welfare v. Davenport,* 495 U.S. 552, 565, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990) ("strict language ... does not control, even if the statutory language has a plain meaning, if the application of that language will produce a result demonstrably at odds with the intention of its drafters") (internal quotations and citation omitted).

The legislative history of a statute is significant "when the statute is not clear or when the application of its plain language produces absurd or unjust results." *United States v. Shriver,* 989 F.2d 898, 901 (7th Cir.1993) (internal quotations and citation omitted). In determining that the Illinois one-refiling rule is not preempted, the district court relied on the House Report which explains § 300aa–22(e) in the following terms:

> State statutes that effectively foreclose individuals from bringing civil actions for vaccine-related injuries or deaths or [sic] preempted by this subsection. The Committee intends this preemption to apply even where a State has established a compensation system as an alternative to filing a civil action. It does not intend, however, to preempt statutes of limitations or other provisions of state law and practice that regulate the time or manner in which civil actions in general may be brought or maintained ....

H.R.Rep. No. 99–908, at 27 (1986), U.S. Code Cong. & Admin. News 1986 at 6344, 6368. It is hard to imagine legislative history that speaks more directly to the issue and Evans offers no alternative history that would support her interpretation of the Act's preemptive effect.[6] In light of the statutory language, legislative scheme and, in particular, this legislative history, we agree with the district court that the Illinois one-refiling rule is not preempted by the Vaccine Act.

### III.

Next we turn to the issue whether the present action is barred by the Illinois one-refiling rule. Statutes of limitations are

---

6. In her Brief, Evans did not address this legislative history. Eventually, when pressed on rebuttal at oral argument, Evans's attorney took the

position that the meaning of § 300aa–22(e) is plain and that recourse to legislative history is not required. As noted, we disagree.

generally considered part of the forum state's substantive law which federal courts must apply when sitting in diversity. *See Guaranty Trust Co. v. York,* 326 U.S. 99, 109–10, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945). Thus, we have applied the Illinois one-refiling rule in diversity cases. *See, e.g., Locke v. Bonello,* 965 F.2d 534 (7th Cir.1992).[7] Moreover, we have previously recognized that the rule allows for a single refiling whether in state court or federal court. *See Koffski v. Village of North Barrington,* 988 F.2d 41, 43–44 (7th Cir.1993) (plaintiffs were barred from refiling in the district court where their suit had been voluntarily dismissed in state court and then dismissed for lack of subject matter jurisdiction in the district court). In other words, a plaintiff who has filed suit in state court and subsequently commenced diversity proceedings in the district court has exhausted the rule and cannot refile in either court for a second time. Regardless of the forum, Illinois permits a plaintiff just two bites at the apple.

Defendants contend that there has been a total of four filings with respect to Jessica's vaccine-related injuries: (1) the state court action against the Link Clinic and Sharma; (2) the initial diversity action in the district court naming all three defendants; (3) the petition with the Court of Claims; and (4) the present diversity action.[8] With respect to the Link Clinic and Sharma, it is undisputed that there were two previous filings—in the state court and the district court, respectively—naming these defendants as parties. On the basis of *Koffski,* Evans exhausted the Illinois one-refiling rule when she voluntarily dismissed her state court action and commenced proceedings in the district court.

Evans seeks to escape from *Koffski's* grip by arguing that the Illinois rule is triggered only by a voluntary dismissal whereas she was compelled to seek relief in the Court of Claims. This suggestion is flatly contradicted by the Vaccine Act which expressly gave Evans the option to go to the Court of

Claims or to proceed with her pending diversity action. For the purposes of the Illinois one-refiling rule, we see no principled reason to distinguish Evans's decision to forego her diversity action to petition the Court of Claims from her previous decision to abandon the state court in favor of a federal forum. In both instances, the policies underlying the Illinois rule are implicated insofar as Evans made a strategic choice regarding the most advantageous forum for the pursuit of her claims.

 Evans also points out that in giving her the option to file a petition in the Court of Claims, the Act provided that her civil action be "dismissed without prejudice." 42 U.S.C. § 300aa–11(a)(5)(A). From this premise, she infers a Congressional intent to permit the resumption of civil litigation purely as an incentive to plaintiffs like herself to forego pending civil actions in favor of compensation claims under the Act. But Congress gave all vaccine-injury plaintiffs—and not merely those who had civil actions pending—the right to resort to civil litigation after exhausting their remedies in the Court of Claims. Evans's contention is untenable because it fails to take account of the statutory caveat that the commencement or resumption of civil proceedings—as well as their substantive determination—is a matter for state law. *See* 42 U.S.C. §§ 300aa–21(c) & 300aa–22(a). To put it another way, there is no reason to believe that in deciding not to preempt state statutes of limitations Congress intended to make an exception for plaintiffs who had civil actions pending when the Act came into effect.

In any event, as far as Illinois is concerned, the circumstances in which Evans departed from the district court for the Court of Claims are not material to the application of the one-refiling rule. The Illinois Supreme Court has held that where a cause of action has been dismissed on two occasions, the plaintiff cannot refile regardless of

---

7. In this regard, we reject Evans's argument that this case is governed by Fed.R.Civ.P. 41, which allows a second refiling.

8. With respect to the third filing, it is an open question whether filing a petition in the Court of

Claims under the Vaccine Act constitutes a filing for the purposes of the Illinois saving statute. But it is not necessary to resolve this question for present purposes.

the reason for the second dismissal. *See Timberlake,* 221 Ill.Dec. 831, 676 N.E.2d at 637 ("Under the statute, the reason a cause of action was originally dismissed is important in determining whether a plaintiff can subsequently refile, but after the case has been filed a second time, the reason for the second dismissal is of no consequence at all. No matter why the second dismissal took place, the statute does not give plaintiff the right to refile again."). In the present case, it is sufficient that Evans voluntarily dismissed her state court action, that she refiled in the district court and that her case was dismissed for a second time. At least with respect to the Link Clinic and Sharma, the present action constitutes an additional filing that is barred by the Illinois saving statute.

The position with respect to Lederle is more problematic since Lederle was not named as a defendant in the state court action. Evans contends that because Lederle was technically a party only to the original diversity action, the present action constitutes the first refiling against Lederle and, as such, is permitted by the Illinois rule. Lederle counters that its absence from the initial proceeding is a mere technicality. It takes the position that the filings in state and federal court arose out of the same set of facts and therefore comprise the same proceedings for the purposes of the Illinois rule.

The Illinois rule does not differentiate on its face between actions brought against different defendants by the same plaintiff. Evans cites no instance in which a court in Illinois has ignored the rule on this basis. Illinois courts have held that, for the purposes of § 13–217, a complaint is deemed to be refiled where it contains the same cause of action as defined by *res judicata* principles. *See D'Last Corp. v. Ugent,* 288 Ill.App.3d 216, 224 Ill.Dec. 30, 681 N.E.2d 12, 16, *app. denied,* 174 Ill.2d 558, 227 Ill.Dec. 3, 686 N.E.2d 1159 (1997). *Res judicata* bars a further suit if "the same facts were essential to maintain both actions" or if "a single group of operative facts gives rise to the assertion of relief." *Rodgers v. St. Mary's Hosp.,* 149 Ill.2d 302, 173 Ill.Dec. 642, 597 N.E.2d 616, 621 (1992) (internal quotations and citations omitted). Here, Evans's claims against all three defendants arise out of the same essential group of operative facts. Insofar as § 13–217 is designed to temper the litigious excesses of plaintiffs, it is reasonable to apply it to multiple refilings of the same action even against additional defendants. Otherwise, a plaintiff could prolong litigation indefinitely merely by failing to join necessary defendants. *See Gendek,* 116 Ill.Dec. 230, 518 N.E.2d at 1053 ("[Section 13–217] was intended to serve as an aid to the diligent, not a refuge for the negligent.").[9] Thus, we believe that Evans should not be able to maintain this action simply because Lederle was not named as a party in the original state court action.[10]

We are mindful that for Evans the dismissal of this suit so far down the road to recovery may be a bitter pill to swallow. We also recognize that there may be a technical ring to some of the analysis. But to allow Evans to institute fresh proceedings more than 13 years after she first filed suit would invite the evils of uncertain and protracted litigation, which Illinois has chosen to contain. Having voluntarily sought relief before the Court of Claims and having failed in that endeavor, Evans must satisfy the Illinois statute of limitations in order to pursue her diversity action in the district court. Unfortunately for Evans, the Illinois Supreme Court has made clear that the saving statute allows for only one refiling. Evans's refiling of the present action was therefore barred.

AFFIRMED

---

9. Another way of looking at the problem—which also casts it in a light favorable to Lederle—is to say that Lederle should not be penalized for Evans's oversight in failing to include it as a defendant in the original state court action.

10. In light of this conclusion, it is not necessary to consider Lederle's alternative argument, namely that the petition before the Court of Claims constitutes a refiling for the purpose of the Illinois saving statute.