775 A.2d 528 (2001)
341 N.J. Super. 369
Janet McDONALD, Individually and as Guardian ad Litem of Michael McDonald, an infant, Plaintiff-Appellant,
v.
LEDERLE LABORATORIES, a division of American Cyanamid Corporation; American Cyanamid Corporation, a subsidiary of American Home Products Corporation, and American Home Products Company; Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued May 2, 2001.
Decided June 18, 2001.
*529 Michael R. Hugo (Hugo & Pollack) of the Massachusetts bar, admitted pro hac vice, Boston, MA, argued the cause for appellant (Todd Brandon Eder, East Brunswick and Mr. Hugo, attorneys; Mr. Eder, on the brief).
Lauren E. Handler, Morristown, argued the cause for respondents (Porzio, Bromberg & Newman, attorneys; Ms. Handler and Steven P. Benenson, of counsel and on the brief; Garineh S. Dovletian, on the brief).
Before Judges WALLACE, LINTNER and PARRILLO.
The opinion of the court was delivered by LINTNER, J.A.D.
The National Childhood Vaccine Injury Act, 42 U.S.C. §§ 300aa-1 to 300aa-34 (the Act) provides a federal no-fault system for compensating vaccine-related injuries or death by establishing a claim procedure involving the United States Court of Federal Claims and special masters. See 42 U.S.C. § 300aa-12. Where the vaccine is administered after the effective date of the Act, a petitioner is required to file a claim petition within thirty-six months after the date of the occurrence of the first symptom or manifestation of the onset of injury. Id. at § 300aa-16(a)(2). Whether compensation is awarded or not, the Act provides that the petitioner may make an election to either accept the judgment or file a civil action for damages for such injury or death. Id. § 300aa-21(a). The central issue in this appeal is whether a subsequent civil action is barred by the Act, where a judgment of dismissal is entered by the United States Federal Claims Court, based upon the petitioner's failure to file the claim petition within the thirty-six-month period. We hold that the Act bars an individual, who files an untimely petition, from later seeking recovery for injuries resulting from an adverse reaction to vaccination in a subsequently filed State civil action.
Michael McDonald was born on April 13, 1989. At three months of age he was *530 inoculated with a vaccine against diphtheria, pertussis and tetanus (DPT), manufactured and sold by defendants, Lederle Laboratories, American Cyanamid Corporation and American Home Products Corporation. It is alleged that, later that day after receiving the vaccine, Michael manifested an adverse reaction, as a result of which he currently suffers from a seizure disorder, encephalopathy, mental retardation and developmental delay. On May 4, 1998, Janet McDonald filed a petition, in her capacity as mother and next friend of Michael, against the Secretary of Health and Human Services (the Secretary) with the Office of the Special Master of the Court of Federal Claims seeking compensation under the Act. Id. § 300aa-11(a)(1). On June 12, 1998, the Secretary made an oral motion to dismiss, based upon the untimely filing of the petition. Id. § 300aa-16(a)(2). On July 17, 1998, a judgment was entered pursuant to the Special Master's decision dismissing the petition. The order of judgment contained the following: "NOTE: As to election, 90 days from this date, see Vaccine Rule 12."
On September 28, 1998, petitioner filed an election to file a civil action pursuant to section 300aa-21(a). On September 30, 1998, plaintiff, Janet McDonald, individually, and as Guardian ad Litem for Michael, filed a complaint against defendants seeking compensable and punitive damages. On January 20, 2000, defendant moved for summary judgment contending that plaintiff's complaint was time barred pursuant to the provisions of the Act. Following oral argument, on March 3 and April 14, 2000, the judge dismissed plaintiff's complaint in its entirety. The judge found that the Act required the filing of a timely petition as a condition precedent to the bringing of a civil action within the framework of the State's statute of limitations and, because the petition was untimely, the State action was barred. The judge also noted that plaintiff's contention that the thirty-six-month limitation period was equitably tolled because plaintiff was unaware of the federal program, was not properly before her.[1] She found that the proper court in which to raise the issue of equitable tolling was the Federal Court of Claim.
We affirm the judge's order dismissing the complaint to the extent that it asserted a claim in plaintiff's capacity as Guardian ad Litem for Michael. We reverse and remand that portion of the order which dismisses the individual claims asserted by plaintiff.
We begin our analysis with the applicable provisions of the Act. The passage of the Act in November 1986, established a National Vaccine Injury Compensation Program (the Program) to protect the vaccine supply from market instability created by an increasing number of vaccine-related personal injury lawsuits. Mary Beth Neraas, Comment, The National Childhood Vaccine Injury Act of 1986: A Solution To The Vaccine Liability Crisis?, 63 WASH. L. REV. 149, 156 (1987), 42 U.S.C. § 300aa-10(a)(1). Section 300aa-11 of the Act requires that a claimant first file a petition and fully adjudicate a claim arising from injury resulting from vaccination through the federal compensation program, before filing a civil action in either State or Federal court. Sections 300aa-11(a)(2)(A) and (B) provide in pertinent part:
(2)(A) No person may bring a civil action for damages in an amount greater than $1000 or in an unspecified amount against a vaccine administrator or manufacturer *531 in a State or Federal court for damages arising from a vaccine-related injury ... unless a petition has been filed, in accordance with section 300aa-16 of this title, for compensation under the Program for such injury or death....
(B) If a civil action which is barred under subparagraph (A) is filed in a State or Federal court, the court shall dismiss the action.
Section 300aa-11(B) further provides that, where a civil action is brought prior to the filing of a petition, the date of its dismissal shall, for the purposes of the statute of limitations under the Act, "be considered the date the petition was filed," so long as the petition is filed "within one year of the date of the dismissal of the civil action."
The Act's limitation of action provision, section 300aa-16(a)(2), provides that "no petition may be filed for compensation under the Program ... after the expiration of 36 months after the date of the occurrence of the first symptom or manifestation of onset or of the significant aggravation of such injury...." It also provides that "if a petition is filed under section 300aa-11," the applicable State law statute of limitations for a civil action "shall be stayed ... for the period beginning on the date the petition is filed and ending on the date" an election is made pursuant to section 300aa-21(a) or -21(b). Id. § 300aa-16(c).
Section 300aa-21(a) provides for an election after a judgment has been entered in the Court of Federal Claims or a later appeal. It mandates the filing of a written election by petitioner within ninety days of the final judgment if (1) the judgment awarded compensation ("to receive the compensation or to file a civil action for damages ....") or (2) the judgment did not award compensation ("to accept the judgment or to file a civil action for damages...."). Id. § 300aa-21(a)(1) & (2). A petitioner's right to file a civil action for damages may also be preserved by withdrawing the claim petition if the special master fails to make a decision on the petition within 240 days or fails to enter a judgment within 420 days. Id. §§ 300aa-21(b), 300aa-11(a)(2)(A)(ii).
Section 300aa-21(c), Limitation of actions, provides:
A civil action for damages arising from a vaccine-related injury or death for which a petition was filed under section 300aa-11 of this title shall, except as provided in section 300aa-16(b) of this title, be brought within the period prescribed by limitations of actions under State law applicable to such civil action.
Section 300aa-22(b) & (c), bars civil liability to manufacturers from unavoidable side effects and failure to provide direct warnings to the injured party. Section 300aa 22(e) prohibits states from establishing or enforcing "a law which prohibits an individual from bringing a civil action against a vaccine manufacturer for damages for a vaccine-related injury ... if such civil action is not barred by this part." Id. § 300aa-22(e).
The issue before us is whether the Act, which expressly preserves the right of a petitioner to make an election to pursue a common law civil action after judgment on the petition is entered, otherwise precludes such an action where the petition is dismissed as untimely filed. Plaintiff asserts that the Act is remedial in nature and, therefore, should be broadly construed to preserve her right to prosecute a claim for damages based upon tort liability, notwithstanding the untimely filing of the federal claim petition. She argues, essentially, that Congress's intent and the plain language of the Act merely require a petitioner to first exhaust the federally mandated program; it does not preclude the later *532 election of a common law right where the compulsory petition is untimely filed.
We agree that the pivotal issue is whether the thirty-six-month filing requirement is exhaustive or preclusive in nature. Our search of Federal and State cases have failed to yield any decision addressing the issue before us.[2] The resolution of the issue requires us to initially consider the plain meaning of the provisions in question. "The plain language of a statute is paramount in determining its proper meaning and application unless that language is inconsistent with manifest legislative intent or another meaning expressly indicated." Cox v. Cox, 335 N.J.Super. 465, 476-77, 762 A.2d 1040 (App.Div.2000). As such, unless the legislative intent is to the contrary, the plain meaning of the statutory language must be given its ordinary meaning. Merin v. Maglaki, 126 N.J. 430, 434-35, 599 A.2d 1256 (1992). Legislative intent may be ascertained from extrinsic evidence such as legislative history and committee reports. State v. Hoffman, 149 N.J. 564, 578, 695 A.2d 236 (1997). The court's goal is to "`effectuate the legislative intent in light of the language used and the objects sought to be achieved.'" Merin, supra, 126 N.J. at 435, 599 A.2d 1256 (quoting State v. Maguire, 84 N.J. 508, 514(198), 423 A.2d 294) (footnote omitted). Only when the "result [a statute] apparently decrees is difficult to fathom or where it seems inconsistent with Congress's intention" may a court look beyond the plain meaning of the statutory language. Evans v. Lederle Laboratories, 167 F.3d 1106, 1111 (7th Cir.1998), cert. denied, 528 U.S. 929, 120 S.Ct. 325, 145 L.Ed.2d 254 (1999) (quoting United States v. Thomas, 77 F.3d 989, 991 (7th Cir.1996) (citation omitted)).
We are satisfied that the plain meaning of the Act and the Congressional intent are consistent with the conclusion that failure to file a timely petition under the Program bars the later pursuit of a State tort action through the Program's election procedure. The plain language of section 300aa-11(2)(A) expressly precludes a person from bringing a civil action unless a petition is filed "in accordance" with the limitation of action provisions of the Act, section 300aa-16. Although section 300aa-16(c) provides for staying the running of an applicable State statute of limitations when a petition is filed, subparagraph (a)(2) specifically precludes the filing of a petition for a vaccine-related injury suffered beyond the thirty-six-month limitation period. Plaintiff's argument that the preclusive language of section 300aa-11(2)(A) is intended to apply only to preventing a civil action from being filed first, is inconsistent with the fact that section 300aa-16 deals exclusively with limitation of actions.
The meaning of the language used in section 300aa-11(B), which requires a court to dismiss a civil action filed in State or Federal court if barred by subparagraph A, does not necessarily help defendant's position. Defendants urge that the plain meaning of subparagraph B is to bar plaintiff's subsequent civil action and require the entry of a dismissal with prejudice. We are not convinced that defendants' contention is correct. Subparagraph B, in part, provides for an extension of the Program's limitation period if the petition is filed within one year of the dismissal of a previously filed civil *533 action. Absent, for example, a State statute that prohibits subsequent refilings of State actions, it is clear from the election provisions, section 300aa-21, the tolling provisions, section 300aa-16(c), and prohibition against States establishing laws prohibiting the prosecution of a civil action, section 300aa-22(e), that a prohibited prior civil action under subparagraph (2)(A) which is "barred" by subparagraph (B) is to be dismissed without prejudice so long as the petition is timely filed under the Act. See Evans, supra, 167 F.3d at 1113.
However, notwithstanding the tolling, election and anti-preemption provisions of the Act, the legislative history and Congressional intent comport with an edict mandating that a claim petition be decided on its merits first, before permitting an election to file a civil action. Our conclusion, that a dismissal of a petition on procedural grounds as filed untimely bars a subsequent State action, is consistent with Congress's goal.
One of the purposes of the Act was to keep manufacturers of vaccines in the market. Schafer v. American Cyanamid Co., 20 F.3d 1, 4 (1st Cir.1994). Vaccine manufacturers had presented Congress with evidence that the costs related to tort insurance and defense of civil litigation "had begun to dwarf their vaccine production revenues." Ibid.
Evidence in the hearing record indicated that compensation-related price increases or manufacturer withdrawal would cause serious harm. Vaccines benefit those who are vaccinated, and they have public benefits as wellwhen parents vaccinate their own children, they also help stop the spread of a disease that can injure others. And, even though vaccines themselves cause a small number of serious injuries or deaths, their widespread use dramatically reduces fatalities. For example, the DPT vaccine itself may cause 150 or so incidents of serious neurological damage.... But, before widespread vaccination... diphtheria killed about 15,000.... Thus, despite the price to be paid in vaccine-caused injuries, widespread vaccination ... has virtually wiped out these devastating diseases.
The upshot is that, because vaccine benefit so many (and harm so few) even small vaccine price increases, if followed by even a small decline in vaccinations, can cause more public harm through added disease than the sum-total of all the harm vaccines themselves cause through side-effects. Ibid.

In addition to its motivation to prevent an increase in vaccination prices, Congress was concerned with the consequences resulting from a loss of manufacturers. Shackil v. Lederle Labs., 116 N.J. 155, 184, 561 A.2d 511 (1989). Quoting from the legislative history, our Supreme Court noted:
Currently there [are] only * * * two manufacturers of DPT vaccine * * *. The withdrawal of even a single manufacturer would present the very real possibility of vaccine shortages, and, in turn, increasing numbers of unimmunized children, and perhaps, a resurgence of preventable diseases. Ibid.

Congress consequently sought to lower the costs associated with complex tort procedures by providing "fairly generous, more easily obtainable, Vaccine Court awards," thereby discouraging victims from bringing traditional tort actions. Schafer, supra, 20 F.3d at 4-5. Congress focused on affording an injured party an expedited procedure, thus encouraging the use of the Program and discouraging utilization of the traditional tort-law avenues which, unlike the Program, required proof of causation, injury, negligence and defect, and held out the prospect of protracted *534 litigation and settlement negotiations with manufacturers. Shackil, supra, 116 N.J. at 184, 561 A.2d 511. Thus, section 300aa-11(a)(1)(A) provided that "[n]o person may bring a civil action for damages ... unless a petition has been filed ..." and section 300aa-21 permits an election only after a judgment either awarding or not awarding compensation has been rendered or there has been an unacceptable delay in the Program's procedure.
By permitting an injured plaintiff to "jump ship and initiate or resume" a previously dismissed civil action Congress created "a bias in favor of the federal compensation scheme by requiring vaccine-injury plaintiffs to exhaust the remedy under the Act before resorting to civil litigation." Evans, supra, 167 F.3d at 1108-09. The essential question is whether the purpose of the Act, to encourage the use of the claim procedure to afford relief to an injured party, trumps its desire to preserve plaintiff's right to pursue a traditional remedy by barring a civil action if the claim is dismissed on procedural grounds and not decided on the merits. The answer is found in House Report No. 99-908 2d. Sess. at 25 (1986), reprinted in 1986 U.S.Code Cong. & Admin. News 6344, 6366 (1986), which provides:
Should the petitioner properly elect to file a civil action for damages, he or she must then look to State law to determine the period within which such an action for damages must be filed. A number of States have statutes of limitations that are stayed during the period in which one is a minor. Except for the requirement (where applicable) that one file a petition for compensation within the proper time period as a prerequisite to filing a civil action for damages and the provision in Section 2116(c)(discussed above) that stays the statute of limitations during the pendency of a petition for compensation, nothing in this legislation is intended to affect these statutes of limitationsor any other provisions of State statutes of limitationswith respect to the filing of civil actions for damages for a vaccine-related injury or death. (Emphasis added).
The above expression of legislative intent is consistent with the plain wording of sections 300aa-11(a)(2)(A) and 300aa-16 (a)(2). Moreover, requiring a claim petition to proceed on its merits in accordance with the Program's expedited procedural guideline achieves the purpose for which the Act was passed, to encourage persons sustaining vaccine-related injury to use and benefit from the Program's favorable provisions abrogating the traditional tort burden of proof. It expressly warns that a victim's traditional tort claim will not be saved by a state statute of limitations that extends beyond the limitation period proscribed by the Act, if a claim is not filed with the Program within its time restrictions. Similarly, the Act makes it clear that more restrictive state limitation periods are stayed so long as a claim is filed under the Act.
The application of the plain language is not at odds with the intention of the drafters. Our conclusion is consistent with the "ethical obligation" the Act places on an attorney, who is consulted by someone respecting a vaccine-related injury or death, to advise regarding the availability of compensation under the Program. Id. § 300aa-10(b). The preclusive application of the Act, which prevents plaintiff in her representative capacity from pursing a civil action does not represent an "absurd or unjust result," that would permit us from disregarding its plain language. United States v. Shriver, 989 F.2d 898, 901 (7th Cir.1993). It is, instead, consistent with the stated purpose of avoiding the public harm that would result from either a *535 loss or decline in the production of necessary vaccines. Simply put, Congress wants victims to first try the Program with the expectation that its results will be accepted. Unless a petitioner is required to fully adjudicate a claim, pursuant to the Program's expedited procedures, Congress's objectives will not be realized.
Finally, although not raised by either party, we note that the third count of the complaint seeks damages incurred by Michael's mother individually, which include loss of society and services, as well as medical and other expenses. See Tynan v. Curzi, 332 N.J.Super. 267, 753 A.2d 187 (App.Div.2000). Section 300aa-11(1)(A) permits parents of injured children to file on behalf of a minor in their representative capacity only. The Act does not preclude parents from filing an individual civil action for losses incurred by them. In Schafer, supra, 20 F.3d 1, the Circuit Court of Appeals held that the filing of a petition by one parent, who had contracted polio allegedly as a result of a child's receipt of oral polio vaccine, did not prevent either the other parent or the child from maintaining a tort suit seeking damages for loss of companionship and consortium under Massachusetts law. In rendering its decision, the Circuit Court of Appeals observed that a person who cannot file a petition under the Act cannot be banned from filing a tort suit by the Act. Id. at 5.
Similarly, the Supreme Court of Mississippi held that a complaint for fraudulent misrepresentation, which had been dismissed while a petition was pending, was subject to refiling even if a claim petition was later determined to be untimely filed under the Act, because a fraudulent misrepresentation suit was beyond the purview of the Act. Cook v. Children's Medical Group, 756 So.2d 734 (Miss.1999).
Here, the Law Division has not had the opportunity to rule on the viability of plaintiff's individual claims in light of the holdings in Schafer and Cook. We, therefore, affirm the dismissal of plaintiff's complaint as Guardian ad Litem for Michael. However, we reverse and remand the dismissal for further proceedings, to the extent that it precluded plaintiff's individual claims.
Affirmed in part, reversed and remanded in part. We do not retain jurisdiction.
NOTES
[1] Although not raised by plaintiff as error, the issue has been recently addressed in Brice v. Secretary of Health and Human Services, 240 F.3d 1367,1368 (Fed.Cir.2001), which held that equitable tolling is not available for claims arising under section 3000aa-16(a)(2).
[2] In Brice, supra, 240 F.3d at 1368, in reaching its determination that equitable tolling is not available for claims arising under section 300aa-16(a)(2), the Court of Appeal noted that it "need not decide in this case whether a petitioner who fails to file a timely petition under the Program may still pursue traditional tort remedies."