No. 3-01-0624

_________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2002

KRYSTAL K. DICKEY, Mother and    ) Appeal from the Circuit Court

Next Friend of Gina M. Dickey,   ) for the 14th Judicial Circuit

a Minor,   ) Whiteside County, Illinois

   )

Plaintiff-Appellant,   )

   ) No. 00-L-26

   )

   )

CONNAUGHT LABORATORIES, INC.,   ) Honorable Dan Dunagan

   ) Judge, Presiding

Defendant-Appellee.   )

_________________________________________________________________

Modified Upon Denial of Rehearing

JUSTICE McDADE delivered the opinion of the court:

_________________________________________________________________

Krystal K. Dickey, as mother and next friend of plaintiff, Gina M. Dickey, filed a complaint in Illinois state court seeking recovery against defendant, Connaught Laboratories, Inc., for injuries she suffered from the administration of diphtheria, tetanus and pertussis (DTP) vaccine.  In response, defendant filed a motion for summary judgment.  The trial court granted defendant's motion.  Plaintiff now appeals.  We affirm.

FACTS

On June 23, 1994, Gina Dickey was born as a healthy, normal baby.

On October 11, 1994, Gina received an administration of DTP vaccine.  Later on that day, she began to suffer jerking spasms lasting between 5 to 10 minutes each.  Her condition continued to worsen.  On February 24, 1995, Dr. Taravath, a pediatric neurologist, diagnosed plaintiff with a vaccine encephalopathy resulting in developmental delay.  

On October 24, 1997, plaintiff's mother, as her next friend, filed a petition on her behalf in the United States Court of Federal Claims (claims court), seeking compensation for plaintiff's injuries pursuant to the National Childhood Vaccine Injury Act of 1992 (Vaccine Act or Act).  (42 U.S.C. §300 
et seq
. (1994)).  On February 26, 1998, the claims court dismissed the petition as untimely, stating that pursuant to section 300aa-16(a)(2) of the Vaccine Act, no petition seeking compensation for a vaccine-related injury could be filed after 36 months from the date of the occurrence of the first symptom of injury.  

On April 1, 1998, the claims court entered a judgment dismissing the petition as untimely.  On April 28, 1998, pursuant to section 300aa-21(a), plaintiff filed an election to file a civil action.

On October 21, 1999, plaintiff filed a complaint in state court, seeking recovery from defendant for the injuries she suffered from the administration of the DTP vaccine.  Defendant moved for summary judgment, asserting that the action was time-barred because of plaintiff's failure to file her petition in the claims court within 36 months from the date of the first symptom of her vaccine-related injury.  The trial court granted summary judgment against plaintiff, dismissing her complaint.  

On appeal, plaintiff presents the issue of whether the Vaccine Act preempts state law, namely, Illinois's statute of limitations.  The instant case is one of first impression, as no other Illinois court has yet ruled on this issue.

ANALYSIS

Preemption

Plaintiff contends that the Vaccine Act does not preempt state law, based upon the language of the federal Vaccine Act, its legislative history, and the relevant case law.  She contends that the trial court erred in granting defendant's motion for summary judgment because the federal Vaccine Act cannot be applied to bar Illinois's statute of limitations for minors.

We affirm a trial court's decision to grant summary judgment if the pleadings, depositions, affidavits, and admissions show there are no genuine issues of material fact remaining and that the motion was properly granted as a matter of law.  Our review is 
de novo
.  
Largosa v. Ford Motor Co.
, 303 Ill. App. 3d 751, 708 N.E.2d 1219 (1999).

Plaintiff is correct that the Vaccine Act does not preempt state law.  Federal law can preempt state law under the supremacy clause in three circumstances: (1) where Congress has expressly preempted state action (express preemption); (2) where Congress has implemented a comprehensive regulatory scheme in an area, thus removing the entire field from state realm (implied field preemption); or (3) where state action actually conflicts with federal law (implied conflict preemption).  
Sprietsma v. Mercury Marine,
 197 Ill. 2d 112, 757 N.E.2d 75 (2001).  

Here, none of the three preemption situations exists.  Express preemption exists where Congress specifically states that a particular federal law preempts a certain state law.  
Sprietsma
, 197 Ill. 2d at 118, 757 N.E.2d at 79.  There is no express preemption in this case, because Congress has not specifically stated in the Vaccine Act that the Act will preempt state statutes of limitations. 

Neither is there any implied conflict preemption.  Implied conflict preemption exists where it is impossible for a private party to comply with both state and federal requirements, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.  
Sprietsma
, 197 Ill. 2d at 120, 757 N.E.2d at 81.  In this instance, the federal Vaccine Act does not conflict with Illinois procedure.  Rather, it is designed to work in conjunction with state law.  The Vaccine Act provides a federal no-fault system for compensating vaccine-related injuries or death by establishing a claim procedure involving the United States Court of Federal Claims and special masters.  42 U.S.C. §300aa-12 (1994).  Whether or not compensation is awarded, the Act provides that the petitioner may make an election either to accept the judgment or to file a state civil action for damages for such injury or death.  42 U.S.C. §300aa-21(a) (1994). 

The final category, implied field preemption, is also not present.  Implied field preemption occurs where Congress has implemented a comprehensive regulatory scheme in an area, thus removing the entire field from the state realm.  
Sprietsma
, 197 Ill. 2d at 115, 757 N.E.2d at 78.  Here, the Vaccine Act does not occupy the entire field of vaccine manufacturing regulation.  As we have previously discussed, the Act specifically allows petitioners to pursue alternative state remedies.  

Therefore, we agree with plaintiff that the federal Vaccine Act does not preempt state law.  However, Congress, without a finding of preemption, may mandate that a party first timely file with an administrative agency before the party may proceed to a state civil action.  See 
McAfee v. 5
th Circuit Judges
, 884 F.2d 221 (5
th Cir. 1989) (no preemption violation where Federal Tort Claims Act (28 U.S.C.A. §§1346(b), 2675(a)) requires a claimant timely present the claim to the appropriate federal agency as a jurisdiction prerequisite to filing suit).  Here the Vaccine Act created a panel of special masters appointed by the judges of the court of claims to review petitions, conduct all proceedings, and render decisions.  Decisions may be reviewed, upon request of a party, by the court of claims.  In these circumstances, we see no reason why 
McAfee
 could not be appropriately extended to the Vaccine Act’s procedural scheme.

Turning to the merits of plaintiff’s argument, in order to ascertain the correct application of the federal act, we look to the rules of statutory construction.  The primary rule of statutory interpretation and construction, to which all other canons and rules are subordinate, is to ascertain and effectuate the true intent and meaning of the legislature.  In interpreting a statute that has not yet been judicially interpreted, a court must give the legislative language its plain and ordinary meaning.  If the language of the statute is plain, clear and unambiguous, and if the legislative intent can be ascertained therefrom, it must prevail and will be given effect by the courts without resorting to other aids of construction.  
Trigg v. Sanders
, 162 Ill. App. 3d 719, 515 N.E.2d 1367 (1987).

Here, the plain language of the Act demonstrates that injured parties are required to file their claim within the Act's statutory time allowances before the party may bring a separate action in state court.  Section 300aa-16(a)(2) explains that: "[I]f a vaccine-related injury occurred as a result of the administration of such vaccine, 
no petition may be filed for compensation under the Program for such injury after the expiration of 36 months after the date of the occurrence of the first symptom or manifestation of onset or of the significant aggravation of such injury[.]
"  (Emphasis added.)  42 U.S.C. §300aa-16(a)(2) (1994).  

The right to litigate the matter in state court is also lost if the injured party fails to follow the federal statutory guidelines.  Section 300aa-11(a)(2)(A) states that "[n]o person may bring a civil action for damages in an amount greater than $1,000 or in an unspecified amount against a vaccine administrator or manufacturer in a State or Federal court for damages arising from a vaccine-related injury or death associated with the administration of a vaccine after October 1, 1988, and 
no such court may award damages *** for such a vaccine-related injury or death, unless a petition has been filed, in accordance with section 300aa-16 of this title, 
for compensation under the Program for such injury or death."  (Emphasis added.) 42 U.S.C. §300aa-11(a)(2)(A) (1994).  Section 300aa-11(a)(2)(B) explains further that, "[i]f a civil action which is barred under subparagraph (A) is filed in a State or Federal court, the court shall dismiss the action."  42 U.S.C. §300aa-11(a)(2)(B) (1994).  We believe this language clearly and unambiguously prohibits both an action and a remedy in state or federal court unless there has been a timely filing with the claims court.

In this case, pursuant to the plain language of the federal act, we find that the trial court was correct in its decision to summarily dismiss plaintiff's state claim against defendant for its production of DTP vaccine.  Plaintiff experienced her first symptoms of DTP vaccine related injury on October 11, 1994.  Pursuant to section 300aa-16(a)(2), she had until October 11, 1997, to file a petition for compensation in the federal claims court.  Plaintiff's petition was not filed until October 24, 1997.  Thus, the action was appropriately dismissed when the claim was asserted in state court on October 21, 1999.  

As a counterargument, plaintiff cites 
two cases, 
Schaefer v. American Cyanamid Co.
, 20 F.3d 1 (1st Cir. 1994), and 
Cook v. Children's Medical Group, 
756 So. 2d 734 (Miss. 1999), in support of her contention that a party whose petition pursuant to the Vaccine Act is time-barred in the federal claims court still possesses a viable action in state court, so long as the action complies with the state's statutory limitations period. 

However, neither case can be appropriately applied in this instance.  
Schaefer 
only addresses the question of whether the Act applies to 
family members 
of a person who has been injured by certain vaccines.  
Schaefer
, 20 F.3d at 1.  Contrary to plaintiff's counterargument, nowhere in 
Schaefer
 is there any discussion concerning whether the child’s claim for damages arising from the administration of DTP vaccine still exists in state court despite his or her failure to meet the federal Vaccine Act's filing limitations requirements.  

Cook
 itself contradicts plaintiff's counterargument.  Although 
Cook 
acknowledges that section 300aa--16(a)(2) may be equitably tolled in situations where the petitioner has been delayed in filing through fraud or misrepresentation, 
Cook
 explains that outside of such situations, an action time-barred by the federal Vaccine Act will not be saved by a more generous state statutory limitations period.  See 
Cook
, 756 So. 2d at 742. 

In this instance, no allegations of fraud or misrepresentation have been raised.  Thus, as we have previously discussed, plaintiff's action was appropriately dismissed by the state court because of her failure to file a petition in the federal claims court within 36 months from the date of the occurrence of the first symptom of injury resulting from the administration of the DTP vaccine.

Plaintiff also contends that the Vaccine Act contravenes Illinois's special protection of minors' rights.  She maintains that the Vaccine Act's three-year statute of limitations violates public policy because its limitations period is more restrictive than the Illinois statute of limitations, which allows minors to bring a tort action two years after attaining the age of 18 (735 ILCS 5/13-211 (West 1998)).

However, upon review of the relevant case law, we find that Congress did consider public policy in its drafting of the Vaccine Act.  Currently, 
McDonald v. Lederle Laboratories
, 341 N.J. Super. 369, 775 A.2d 528 (2001), is apparently the only court in the United States to discuss whether, pursuant to the Vaccine Act, the failure to timely petition in the federal claims court bars the pursuit of a subsequent state tort action in spite of the state's differing and longer statutory limitations period.  In holding that it does, the New Jersey superior court explained the purposes of the Vaccine Act.  One of those purposes was to keep manufacturers of vaccines in the market.  Vaccine manufacturers had presented Congress with evidence that the costs related to tort insurance and defense of civil litigation had begun to dwarf their vaccine production revenues.  Congress was concerned with the consequences resulting from a loss of manufacturers.  The withdrawal of even a single manufacturer would present the very real possibility of vaccine shortages, and, in turn, increasing numbers of unimmunized children, and, perhaps, a resurgence of preventable diseases.  See 
McDonald v. Lederle Laboratories
, 341 N.J. Super. at 375-77, 775 A.2d at 532-33. 

Congress consequently sought to lower the costs associated with complex tort procedures by providing fairly generous, more easily obtainable awards for vaccine-related injuries, thereby discouraging victims from bringing traditional tort actions.  Congress focused on affording an injured party an expedited procedure, and so it created the no-fault federal judgment system to encourage the use of the program and discourage utilization of the traditional tort-law avenues which, unlike the program, required proof of causation, injury, negligence and defect, and held out the prospect of protracted litigation and settlement negotiations with manufacturers.  Congress wanted victims to first try the program with the expectation that its results would be accepted.  Unless a petitioner was required to fully adjudicate a claim, pursuant to the program's expedited procedures, Congress's objectives would not be realized.  Thus, the Act expressly warns that, if a claim is not filed with the program within its time restrictions, a victim's traditional tort claim will not be saved by a state statute of limitations that extends beyond the limitation period prescribed by the Act.  See 
McDonald
, 341 N.J. Super. at 377, 775 A.2d at 533.

We agree with this analysis of the Act and find no violation of Illinois's public policy.  The trial court's order granting summary judgment in favor of defendant and against plaintiff was correct, and accordingly, we affirm its decision.

In seeking rehearing, plaintiff cited the recent Illinois Supreme Court decision in 
Belleville Toyota, Inc. v. Toyota Motor Sales, USA, Inc.,
 199 Ill. 2d 325, 770 N.E.2d 177 (Rehearing Denied, May 29, 2002).  Plaintiff did not explain what significance she believed that case bore to our decision, and we have been unable to discern its relevance.  Neither the trial court’s order nor this court’s opinion was based on a lack of jurisdiction.  Indeed, both courts exercised jurisdiction in finding plaintiff’s claim barred by her failure to timely file her petition with the claims court and thereby timely exhaust her statutory remedies.

CONCLUSION

In light of the foregoing analysis, we affirm the trial court's decision to grant defendant’s motion for summary judgment and dismiss plaintiff's state claim against defendant for money damages for injuries resulting from the administration of DTP vaccine.

Affirmed.

SLATER, J., concurs.  BRESLIN, J., dissents. 

JUSTICE BRESLIN, dissenting:

_________________________________________________________________

I respectfully dissent because I do not agree with the majority's conclusion that the plaintiff's right to file her state law claim was barred by a failure to timely file a petition under the Vaccine Act.

The Vaccine Act does not explicitly provide that plaintiffs are prohibited from filing their actions in state court if they do not first timely file a petition under the Act.  The Act states that once the Court of Federal Claims (Court of Claims) has entered a judgment, plaintiffs must either elect to accept the award and formally abandon their tort rights or reject the award and proceed by way of civil action.  See 42 U.S.C.A. §§ 300aa-11(a)(2)(A)(i) & 300aa-21(a) (West 2002).  The Act does not state, however, that if a petition is not filed within the applicable statutory period, a plaintiff is barred forever from seeking a state law remedy.  See 
Cook v. Children's Medical Group
, 756 So. 2d 734 (2000) (determining that if a petition under the Vaccine Act is dismissed as being time-barred in the Court of Claims, a plaintiff should be allowed to bring suit under state law).  

Although the majority correctly notes that the Vaccine Act does not preempt state law, it concludes that the Act mandates that plaintiffs first file their actions with the Court of Claims.  While the Act creates an additional method for plaintiffs to recover for injuries due to the administration of the DTP vaccine, it does not explicitly restrict the rights of plaintiffs to pursue traditional state tort remedies.  See 42 U.S.C.A. §§ 300aa-11(a)(2)(A) & 300aa-21(a) (West 2002).

Though the filing of the plaintiff's petition in this case was untimely, she should still be able to pursue a civil action in state court because she substantively complied with the requirements of the Act.  The Act allows a plaintiff to bring civil actions where the Court of Claims "has issued a judgment *** on such petition." 42 U.S.C.A. § 300aa-11(a)(2)(A)(i)(I) (West 2002).  Judgment is defined as "[t]he final decision of the court resolving the dispute and determining the rights and obligations of the parties."  Black's Law Dictionary 842 (6th ed. 1990).  In my view, the Court of Claims' dismissal of this Vaccine Act claim was a final judgment that triggered the plaintiff's right of election to file in state court.  See 
Evans v. Lederle Laboratories
, 167 F.3d 1106, 1109 n.4 (1999) (determining that the Vaccine Act does not require a judgment on its merits).

Furthermore, a consideration of public policy supports a finding that the Vaccine Act does not prohibit Krystal Dickey, as mother and next friend of minor, Gina Dickey, from filing  an action in state court without first pursuing a claim under the Vaccine Act.  As noted by the majority, minors are given special protection for their legal rights.  See, for example, 735 ILCS 5/13-211 (West 2000) (allowing minors to file tort actions within two years after attaining the age of 21).  Moreover, courts have been hesitant to deprive minors of their rights because of the mistakes of their guardians or lawyers.  See 
Dachs v. Louis A. Weiss Memorial Hospital
, 156 Ill. App. 3d 465, 509 N.E.2d 489 (1987) (stating that statutes of limitations consistently have been construed to preserve a minor's right to a day in court).  As such, the Vaccine Act should be interpreted to give the fullest protection possible to minors so that they may obtain fair compensation as a result of vaccine-related injuries. 

Accordingly, I disagree with the majority's conclusion because the plain language of the Vaccine Act does not act to bar

the plaintiff's right to file her action in state court and because a consideration of public policy supports a determination that minors are to be afforded the fullest possible rights to recover for their vaccine-related injuries.