GOETZ v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[203 N.C. App. 421 (2010)]

ANDREW GOETZ AND CATHERINE GOETZ, PERSONAL REPRESENTATIVES/GAL FOR HAYDEN L. GOETZ, A MINOR, PLAINTIFFS v. NORTH CAROLINA DEPARTMENT OF HEALTH & HUMAN SERVICES, DEFENDANT

No. COA09-985

(Filed 20 April 2010)

**Statutes of Limitation and Repose— untimely federal claim— bar to state claim—childhood vaccine-related injury**

A *de novo* review revealed the full Commission erred in a case regarding the causation of a child's mental retardation and the timeliness of plaintiffs' claim for compensation under the federal and state childhood vaccine-related injury compensation programs by holding that plaintiffs' claims were not barred by the state statute of limitations under N.C.G.S. § 130A-129(c). Plaintiffs' failure to file a timely federal petition under 42 U.S.C. § 300aa-16(a)(2) barred them from bringing an action under the state program.

Appeal by defendant and cross appeal by plaintiffs from decision and order entered 6 May 2009 by the North Carolina Industrial Commission. Heard in the Court of Appeals 25 January 2010.

*Creech Law Firm, P.A., by Peter J. Sarda, for plaintiffs-appellees.*

*Attorney General Roy Cooper, by Assistant Attorney General Melody R. Hairston and Special Deputy Attorney General Amar Majmundar, for defendant-appellant.*

HUNTER, Robert C., Judge.

The North Carolina Department of Health and Human Services ("defendant") appeals, and Andrew and Catherine Goetz ("plaintiffs") cross-appeal, from a 6 May 2009 Decision and Order of the Full Industrial Commission ("Full Commission") which incorporates the Full Commission's 29 August 2005 Decision and Order relating to procedure and causation and affirms the 2 September 2008 decision of the Deputy Commissioner awarding damages to plaintiffs.

This case arises out of a dispute regarding the causation of a child's mental retardation and the timeliness of plaintiffs' claim for compensation under the federal and state childhood vaccine-related injury compensation programs. Plaintiffs filed a petition with the United States Court of Federal Claims more than two years outside

the statute of limitations for such claims. Consequently, plaintiffs' petition was dismissed as untimely. After the United States Court of Appeals for the Federal Circuit affirmed the Court of Federal Claims' decision, plaintiffs filed an election to reject federal relief and filed a state action with the North Carolina Industrial Commission. After a series of hearings and appeals, the Full Commission ultimately held that the state action was timely filed under the tolling provision of the state statute of limitations. The Full Commission heard the merits of the claim and held that plaintiffs were entitled to compensation under North Carolina's Childhood Vaccine-Related Injury Compensation Program.

Defendant now appeals from the Full Commission's order and argues that: (1) the action was not timely filed within the state statute of limitations and (2) plaintiffs did not meet their burden of establishing that Hayden Goetz's ("Hayden") DPT shots caused his medical condition. Plaintiffs cross-appeal, claiming that the Full Commission did not properly calculate the damages award. After careful review, we reverse the Full Commission's order.

## Background

On 14 May 1993, Hayden was born to plaintiffs at Durham Regional Hospital in Durham, North Carolina. On 6 July 1993, at the age of two months, plaintiffs took Hayden to Durham Pediatrics in Durham, North Carolina for a check-up and the first of three DPT vaccinations. On 31 August 1993, plaintiffs returned to the pediatrician's office for Hayden's second DPT shot. Hayden received his third DPT shot at Durham Pediatrics on 19 November 1993. Although the nature of Hayden's reactions to each of these three shots is disputed, the parties agree that the medical records document that Hayden suffered a fever sometime after administration of the third DPT vaccine.

Subsequent to the administration of the DPT vaccinations, Hayden's parents, grandparents, and medical providers noticed a delay in his development, for which they sought further medical attention over the next several years. Such medical review included visits to pediatric neurologists and genetic counselors for the purpose of discovering the nature and cause of Hayden's condition. Dr. Michael Tennison ("Dr. Tennison"), who had evaluated Hayden's condition and development semi-annually over two years, ultimately indicated to plaintiffs that Hayden was mentally retarded. Testing was conducted to determine whether genetics was the cause of Hayden's condition, but the results were negative.

Plaintiffs then learned of Dr. Allan Lieberman ("Dr. Lieberman"), an occupational and environmental medicine specialist. Plaintiffs took Hayden to see Dr. Lieberman on 12 August 1997. Dr. Lieberman conducted "challenge testing" on Hayden, which involved exposing Hayden to a variety of inhalants, foods, and other stimuli and recording his reactions to them. Dr. Lieberman noted that Hayden had an elevated reaction when exposed to a sample of pertussis whole cell, which is a component of the DPT vaccine. Based on this test, Dr. Lieberman estimated that there was a 75-80% chance that Hayden suffered from post-immunization encephalopathy. Based on his review of Hayden's medical records, challenge testing results, and the temporal relationship between the DPT shots and Hayden's developmental changes, Dr. Lieberman concluded that the encephalopathy was related to the DPT vaccinations.

## Procedural History

In March 1999, after their consultation with Dr. Lieberman, plaintiffs filed a claim for compensation for a vaccine-related injury with the United States Secretary of Health and Human Services pursuant to the Public Health Services Act. On 25 January 2001, the United States Court of Appeals for the Federal Circuit ordered the case dismissed as having been filed outside the three-year statute of limitations period set forth in 42 U.S.C. § 300aa-16 (2000). On 2 March 2001, plaintiffs filed a Form V-1 with the Industrial Commission to initiate a *de novo* state proceeding against defendant under the North Carolina Childhood Vaccine-Related Injury Compensation Program.

Pursuant to N.C. Gen. Stat. § 130A-422 *et seq.* (2009), the matter was heard before the presiding Deputy Commissioner. The Deputy Commissioner filed a Decision and Order on 17 March 2003 which determined that plaintiffs' claim was untimely due to plaintiffs' failure to file an election to reject the judgment of the United States Court of Federal Claims pursuant to 42 U.S.C. § 300aa-21(a)(2), which is a jurisdictional prerequisite to a state action under N.C. Gen. Stat. § 130A-423(b1). Both parties timely appealed to the Full Commission. After filing briefs in the matter, the parties stipulated to the admission of plaintiffs' purported "Election to File Civil Action."

On 21 August 2003, the Full Commission heard oral arguments. Prior to the filing of the Decision and Order, Commissioner Christopher Scott recused himself from the matter. On 15 December 2003, the remaining two Commissioners issued a unanimous Decision and Order in favor of defendant. Plaintiffs timely appealed to this

Court, which vacated and remanded the 15 December 2003 Industrial Commission Decision and Order on the grounds that Commissioner Scott's recusal denied plaintiffs their statutorily guaranteed hearing before the Full Commission. *See Goetz v. Wyeth-Lederle Vaccines*, 168 N.C. App. 712, 716-17, 608 S.E.2d 810, 813 (2005).

On 27 June 2005, the matter was heard by a panel of three new Commissioners. In its 29 August 2005 Decision and Order, the Full Commission reversed the Deputy Commissioner's 17 March 2003 Decision and Order and held that: (1) plaintiffs' state claim was timely filed due to the tolling provision of the state statute of limitations and (2) Hayden suffered a compensable vaccine-related injury under N.C. Gen. Stat. § 130A-422 *et seq.* The Full Commission remanded the case to the Deputy Commissioner on the issue of damages. Defendant subsequently filed an appeal, which was dismissed by this Court as interlocutory on 20 March 2007. *Goetz v. Wyeth-Lederle Vaccines*, 2007 WL 817417, at *3 (N.C. Ct. App. March 20, 2007). On 11 April 2007, the Full Commission again remanded the matter to the Deputy Commissioner for a hearing on the issue of damages.

On 24 April 2008, plaintiffs filed a motion for summary judgment, and defendant filed its response on 5 May 2008. After hearing oral arguments, the Deputy Commissioner filed a Decision and Order which applied the $300,000 statutory cap to plaintiffs' damages, making no adjustment for present value. Both parties appealed to the Full Commission.

The Full Commission heard oral arguments on 10 March 2009 on the issue of damages and affirmed the Decision and Order of the Deputy Commissioner on 6 May 2009. Subsequently, both parties gave notice of appeal to this Court.

## Discussion

Defendant's first argument is that the Full Commission erred in holding that plaintiffs' claims were not barred by the state statute of limitations. In the alternative, defendant argues that the Full Commission erred by admitting and relying upon incompetent evidence to establish causation. Plaintiffs argue that the Full Commission's holdings on both of these issues were proper, but that the Full Commission erred in failing to adjust the damages award to its present value. Because we agree with defendant on the first issue, we need not address the parties' remaining contentions.

### I. Standard of Review—Statute of Limitations

Where there is no dispute over the relevant facts, a lower court's interpretation of a statute of limitations is a conclusion of law that is reviewed *de novo* on appeal. *North Carolina Dept. of Revenue v. Von Nicolai,* —— N.C. App. ——, ——, 681 S.E.2d 431, 433 (2009) ("Since this is a question of statutory interpretation, we will conduct a *de novo* review of the [superior] court's conclusions of law.") (internal citations omitted). "Alleged errors of law and questions of statutory interpretation are reviewed *de novo*." *Downs v. State,* 159 N.C. App. 220, 221-22, 582 S.E.2d 638, 639 (2003).

Although the present action is an appeal from the Decision and Order of the Full Commission instead of an appeal from the decision of a lower court, N.C. Gen. Stat. § 130A-428(c) (2009) expressly provides that the same standard of review for errors of law used in appeals from the trial courts applies to appeals from the Full Commission for actions brought under the North Carolina Childhood Vaccine Related Injury Program. This statute states in pertinent part:

[A]ny party to the proceedings may, within 30 days from the date of the decision or award, or within 30 days after receipt of notice to be sent by registered mail or certified mail of the award, but not thereafter, appeal from the decision or award of the Commission to the Court of Appeals for errors of law under the same terms and conditions as govern appeals from the Superior Court to the Court of Appeals in ordinary civil actions.

N.C. Gen. Stat. § 130A-428(c).

In the present case, the parties stipulated to the date plaintiffs' claim was presented under the federal compensation scheme. Further, neither party disputes the date the claim was subsequently presented to the North Carolina Industrial Commission; rather, they dispute the Industrial Commission's interpretation and application of the state statute of limitations and its tolling provision to these dates. Thus, this Court must review the statute of limitations issue presented by this case *de novo*.

### II. Interpretation of the Applicable Statute of Limitations

Defendant argues that plaintiffs' failure to avail themselves of the federal program in a timely manner should preclude them from availing themselves of the tolling provisions set out in 42 U.S.C. § 300aa-16(c) and N.C. Gen. Stat. § 130A-429(c). Although this is a question of first impression in North Carolina, the legislative history

of the Federal Public Health Service Act ("Federal Vaccine Act"), codified at 42 U.S.C. § 300aa-10 *et seq.*, and the well-reasoned opinions of other jurisdictions yield compelling support for defendant's position. In order to fully understand defendant's argument, a basic understanding of the Federal Vaccine Act's purpose and administrative framework is necessary.

Enacted in 1986, the Federal Vaccine Act established a remedial no-fault compensation program for vaccine-related injuries or deaths. 42 U.S.C. § 300aa-10 *et seq.* The Act was designed to protect the nation's vaccine supply and to create a fair and easily administered program to provide compensation for vaccine-related injuries. H.R. Rep. No. 99-908, at 5-7 (1986), *reprinted in* 1986 U.S.C.C.A.N. 6344, 6346-48. The statute has a two-fold policy: to expedite the award of damages and to protect vaccine manufacturers from burdensome litigation. *Id.* at 4, *reprinted in* 1986 U.S.C.C.A.N. at 6344-45. To that end, Congress included a strict 36-month statute of limitations that runs from the onset of symptoms. *Id.* at 22-23, *reprinted in* 1986 U.S.C.C.A.N. at 6363-64. The program requires that a person seeking compensation for a vaccine-related injury must first file a petition against the United States Secretary of Health and Human Services before traditional tort remedies may be pursued. 42 U.S.C. § 300aa-11(a)(2)(A); *see also Shalala v. Whitecotton*, 514 U.S. 268, 270, 131 L. Ed. 2d 374, 378 (1995) (explaining that a claimant alleging an injury after the Federal Vaccine Act's effective date "must exhaust the Act's procedures and refuse to accept the resulting judgment before filing any *de novo* civil action in state or federal court").

Claims are heard by special masters appointed by the Court of Federal Claims, are adjudicated informally, 42 U.S.C. § 300aa-12(d)(2), and are then accorded expeditious review by the United States Court of Federal Claims and the United States Court of Appeals for the Federal Circuit. 42 U.S.C. § 300aa-12(e)(2); *Whitecotton*, 514 U.S. at 270, 131 L. Ed. 2d at 378. Compensation awards are paid from the Vaccine Injury Compensation Trust Fund, which is financed by excise taxes on certain vaccines. 42 U.S.C. § 300aa-15(i)(2); 26 U.S.C. § 9510(b)(1) (2000). The Federal Vaccine Act does not totally preempt all traditional tort remedies for covered damages. *Whitecotton*, 514 U.S. at 270, 131 L. Ed. 2d at 378. Rather, after the Court of Federal Claims renders a ruling on a claim, the claimant may accept or reject any award. 42 U.S.C. § 300aa-21. If he accepts an award, he waives further tort rights; if he declines it, he may pursue traditional tort relief, subject to some restrictions. *Id.*

North Carolina's Childhood Vaccine-Related Injury Compensation Program, N.C. Gen. Stat. § 130A-422 *et seq.*, cross-references and incorporates the Federal Vaccine Act. *See* N.C. Gen. Stat. § 130A-423(b1) ("A claimant may file a petition pursuant to this Article only after the claimant has filed an election pursuant to Section 2121 of the [Federal Vaccine Act]. . . ."); *see also* N.C. Gen. Stat. § 130A-423(d) (limiting certain recoveries under the state program when relief has been obtained under the Federal Vaccine Act); N.C. Gen. Stat. § 130A-423(e) (preventing the recovery of duplicative damages or imposition of double liability where a claimant seeks an award under the state program through a suit against the manufacturer which is permissible under the Federal Vaccine Act); N.C. Gen. Stat. § 130A-423(f) (addressing subrogation claims pursued under the Federal Vaccine Act against awards under the state program); N.C. Gen. Stat. § 130A-425(b)(7) (requiring a claimant under the state program to file documentation showing that the claimant made an election to reject relief under the Federal Vaccine Act as part of his or her petition to the Industrial Commission); N.C. Gen. Stat. § 130A-429(c) (staying the state statute of limitations during the pendency of proceedings under the Federal Vaccine Act). The North Carolina statute functions as an exclusive remedy for state claims covered under its provisions, and its enforcement has been delegated to the North Carolina Industrial Commission. N.C. Gen. Stat. § 130A-423(b); N.C. Gen. Stat. § 130A-424.

The North Carolina statute provides that claims involving injuries alleged to have been caused by a vaccine must be brought within six years of the administration of that vaccine to avoid being time-barred. N.C. Gen. Stat. § 130A-429(a). The limitations period is tolled during the pendency of a claim in the federal program, ending 120 days after the date a final judgment is entered on the federal petition. N.C. Gen. Stat. § 130A-429(c). That section states in its entirety: "The period of limitation set forth in this section shall be stayed beginning on the date the claimant files a petition under Section 2111 of the Public Health Service Act, P.L. 99-660, and ending 120 days after the date final judgment is entered on the petition." *Id.* Like North Carolina, all other states have enacted statutes of limitation that extend beyond the federal 36-month limitation and that toll for even longer periods, if necessary, pending a judgment in the federal proceedings. *See, e.g.,* Colo. Rev. Stat. §§ 13-81-101(3), -103(c)(1) (2009) (requiring a "person under disability" to take action within 2 years of the disability being removed and defining "person with disability" to include minors under the age of 18); Utah Code Ann. § 78B-2-108 (2008) ("During the

time the person is underage or incompetent, the statute of limitations for a cause of action other than for the recovery of real property may not run."); La. Civ. Code Ann. art. 3492 (2003) ("Delictual actions are subject to a liberative prescription of one year. This prescription commences to run from the day injury or damage is sustained. It does not run against minors or interdicts in actions involving permanent disability and brought pursuant to the Louisiana Products Liability Act or state law governing product liability actions in effect at the time of the injury or damage."). In fact, many of the applicable state statutes toll until after the claimant reaches the age of majority. *See* H.R. Rep. 99-908, at 25, *reprinted in* 1986 U.S.C.C.A.N. at 6366 ("A number of States have statutes of limitations that are stayed during the period in which one is a minor.").

Although all state legislatures have afforded a claimant a longer time in which to file an action in state court than the federal limitation period, it is clear from the text of the Federal Vaccine Act, and its legislative history, that a claimant must file a timely petition and exhaust all of the Federal Vaccine Act's requirements as a precondition to the maintenance of a valid state action. Without having filed a timely federal petition, the longer state statutes of limitation and tolling provisions are irrelevant to a claimant. Otherwise, as defendant points out, allowing claimants to file a petition under the federal program outside the required time period would have the effect of converting the state program into the primary source of recovery. Contrary to the intent of Congress, discussed *supra*, a plaintiff could intentionally avoid pursuing his or her federal remedies and instead litigate a claim solely under North Carolina's statute. Under this scenario, a plaintiff would need only wait until the federal statute of limitations has run, knowingly file a federal petition which is subject to dismissal for untimeliness, and then proceed under the applicable state statute. Because most states provide very lengthy statutes of limitations for minors and the federal program would be so easy to avoid, this interpretation would actually exacerbate one of the very problems Congress sought to address—insulating vaccine manufacturers from stale claims and giving them predictability regarding exposure to litigation. *Id.* at 12-13, *reprinted in* 1986 U.S.C.C.A.N. at 6353-54.

Other courts handling cases similar to the case at bar have agreed with, and elaborated on, this logic. *See, e.g., Blackmon v. American Home Products Corp.*, 328 F.Supp.2d 647, 653-54 (S.D. Tex. 2004). Facing a similar statute of limitations question to the one involved in

the present case, the *Blackmon* court asserted that "[p]laintiffs' interpretation of the Vaccine Act violates the 'elementary canon of construction that a statute should be interpreted so as not to render one part inoperative.' " *Id.* at 653 (quoting *Whitecotton*, 514 U.S. at 278, 131 L. Ed. 2d at 383 (O'Connor, J., concurring)). The *Blackmon* court further reasoned:

> Plaintiffs' overbroad reading of the qualification provision would nullify the limitations provision and, with it, the Vaccine Act itself. Under Plaintiffs' interpretation, a potential claimant could avoid the Act's mandatory compensation scheme entirely by simply running out the 36-month clock. The plain language of the statute, together with the logical presumption that Congress intends its laws to have some effect, weighs conclusively against Plaintiffs' construction of the Vaccine Act.

*Id.* at 654. Ultimately, the *Blackmon* court dismissed plaintiffs' civil action. *Id.* at 659.

The New Jersey Superior Court, appellate division, was one of the first state courts to squarely address the issue raised in the present case. *McDonald v. Lederle Laboratories*, 341 N.J. Super. 369, 775 A.2d 528 (2001). *McDonald* provides a thorough analysis of the proper construction of the Federal Vaccine Act and its underlying Congressional intent. Before engaging in its lengthy and well-reasoned analysis, the court succinctly stated: "We are satisfied that the plain meaning of the Act and the Congressional intent are consistent with the conclusion that failure to file a timely petition under the Program bars the later pursuit of a State tort action through the Program's election procedure." *Id.* at 376, 775 A.2d at 532. The court asserted that the legislative history and Congressional intent clearly require that a petition must be decided on its merits first before permitting an election to file a civil action. *Id.* at 377, 775 A.2d at 533 ("Our conclusion, that a dismissal of a petition on procedural grounds as filed untimely bars a subsequent State action, is consistent with Congress's [sic] goal."). The court then discussed and cited much of the Congressional record and legislative history associated with the Federal Vaccine Act. *Id.* at 377-80, 775 A.2d at 533-35. The court concluded its analysis by summarizing Congress' goals in enacting the Federal Act as follows: "Simply put, Congress wants victims to first try the Program with the expectation that its results will be accepted. Unless a petitioner is required to fully adjudicate a claim, pursuant to the Program's expedited procedures, Congress's [sic] objectives will not be realized." *Id.* at 380, 775 A.2d at 535. We agree with the

*McDonald* court and refuse to adopt a construction which would allow a claimant to circumvent the Federal Vaccine Act's procedures.

In *Dickey v. Connaught Laboratories, Inc.*, 334 Ill. App. 3d 1048, 777 N.E.2d 974 (Ill. App. 3d Dist. 2002), an Illinois appellate court held that the Federal Vaccine Act did not preempt a State's statute of limitations, but the failure to timely file a petition for compensation under the federal program barred a subsequent state civil action. In *Dickey*, as in the present case, the plaintiff child was allegedly born with no detectible abnormalities, but became developmentally delayed after receiving a DPT vaccine. *Id.* at 1049, 777 N.E.2d at 975. The child's mother petitioned the federal claims court just two weeks beyond the 36-month limit provided in 42 U.S.C. § 300aa-16(a)(2). *Id.* at 1049-50, 777 N.E.2d at 975. After the petition to the federal claims court was dismissed as time-barred, the plaintiff-mother filed a state civil action, which was dismissed. *Id.* at 1050, 777 N.E.2d at 975-76.

On appeal, the *Dickey* court, noting that the case was one of first impression, acknowledged that the Federal Vaccine Act does not expressly or impliedly preempt state law. *Id.* at 1050, 777 N.E.2d at 976. Nonetheless, it observed that Congress could mandate that a party first timely file with an administrative agency before being permitted to file a state civil action. *Id.* at 1051, 777 N.E.2d at 977. The court stated that, under 42 U.S.C. § 300aa-11(a)(2)(A), the Federal Act clearly states that "no person may bring a civil action for damages in an amount greater than $1,000 . . . in a State or Federal court . . . unless a petition has been filed . . . for compensation under the Program," and that 42 U.S.C. § 300aa-11(a)(2)(B) further provides that an action barred under subsection (A) must be dismissed. *Id.* at 1052, 777 N.E.2d at 977-78. The court therefore concluded that the statute "clearly and unambiguously prohibits both an action and a remedy in state or federal court unless there has been a *timely* filing with the federal claims court." *Id.* at 1052, 777 N.E.2d at 978 (emphasis added). Holding that the action was appropriately dismissed by the lower court, the appellate court affirmed. *Id.* at 1055, 777 N.E.2d at 979. In *Reilly ex rel. Reilly v. Wyeth*, the Illinois appellate court recently confronted the factual and procedural scenario presented in *Dickey*, and the case at bar, and reached the same conclusion. 377 Ill. App. 3d 20, 32, 876 N.E.2d 740, 752 (Ill. App. 1st Dist. 2007) ("We agree with the court in *Dickey* that the plain language of the Act provides that a party may not sue in state court unless it has first filed a petition in the Court of Federal Claims within the requisite 36-month period.").

The statute of limitations issue is dispositive in the case at bar. Because plaintiffs failed to file a timely federal petition, they are barred from bringing an action under the State program. The Federal Vaccine Act expressly provides that

> no [State or Federal] court may award damages in an amount greater than $1,000 in a civil action for damages for such a vaccine-related injury or death, *unless a petition has been filed, in accordance with section 300aa-16 of this title,* for compensation under the Program for such injury or death.

42 U.S.C. § 300aa-11(2)(A) (emphasis added). To file a petition "in accordance with section 300aa-16," a claimant must file a petition "within 36 months after the date of the occurrence of the first symptom or manifestation of onset or of the significant aggravation of such injury." 42 U.S.C. § 300aa-16(a)(2) (stating that "no petition may be filed for compensation under the Program" outside the 36-month limitation period).

At the latest, Hayden's alleged injury occurred on 19 November 1993. The first federal petition was filed in March 1999. However, plaintiffs were required to file a petition within three years of 19 November 1993 to comply with the federal statute. *See* 42 U.S.C. § 300aa-16(a)(2). Thus, plaintiffs were more than two years outside the federal statute of limitations when they filed their federal petition in March 1999. For that reason, the United States Court of Appeals for the Federal Circuit dismissed the case as time-barred on 25 January 2001. Plaintiffs filed a petition with the Industrial Commission on 2 March 2001, which was more than 6 years from the date of Hayden's last shot. If the federal requirements had been met, plaintiffs' 2 March 2001 filing would have fallen within the 120-day tolling provision of N.C. Gen. Stat. § 130A-129(c). However, regardless of compliance with the state limitation and state tolling periods, noncompliance with the federal statute of limitation is an absolute bar to further adjudication of the merits of plaintiffs' claim.

Because plaintiffs failed to exhaust their federal remedies in a timely manner, their subsequent state action should have been dismissed. As explained above, any other construction would allow a claimant to circumvent the federal program by filing outside the federal limitations period but still within the state limitations period. Absent a timeliness requirement, the filing of a federal petition would be a mere technical prerequisite to filing under the state statute. This is directly contrary to Congress' intent. This Court cannot allow a

construction of the Federal Vaccine Act that contravenes Congress' stated goal of expediting the presentation and resolution of claims, nor can it allow a construction which renders compliance with that Act's provisions optional. Thus, the Full Commission erred in concluding that the tolling provisions could be triggered after plaintiffs had already missed the federal Act's 36-month limitations period.

Plaintiffs argue that their case is not barred by the statute of limitations, relying heavily on the law of the case doctrine. The law of the case doctrine has been summarized as follows:

> The doctrine of the law of the case generally prohibits reconsideration of issues which have been decided by the same court, or a higher court, in a prior appeal in the same case. Provided that there was a hearing on the merits and that there have been no material changes in the facts since the prior appeal, such issues may not be re-litigated in the trial court or reexamined in a second appeal. In short, issues decided in earlier appellate stages of the same litigation should not be reopened, except by a higher court, absent some significant change in circumstances. The doctrine of the law of the case is not an inexorable command, or a constitutional requirement, but is, rather, a flexible discretionary policy which promotes the finality and efficiency of the judicial process . . . .

5 Am. Jur. 2d *Appellate Review* § 566 (2010). Our State Supreme Court has stated that

> "[w]hen an appellate court passes on questions and remands the case for further proceedings to the trial court, the questions therein actually presented and necessarily involved in determining the case and the decision on those questions become the law of the case, both in subsequent proceedings in the trial court and on a subsequent appeal, provided the same facts and the same questions, which were determined in the previous appeal, are involved in the second appeal."

*Transportation, Inc. v. Strick Corp.*, 286 N.C. 235, 239, 210 S.E.2d 181, 183 (1974) (quoting *Collins v. Simms*, 257 N.C. 1, 11, 125 S.E.2d 298, 305 (1962) (Parker, J., dissenting in part)). The statute of limitations issue in this case was not decided in the prior appeals. While the Full Commission did erroneously hold at a prior stage of this litigation that the statute of limitations was tolled, this Court has only vacated and remanded a decision on other grounds and dismissed an

appeal as interlocutory. Regarding this Court's prior order to vacate, our State Supreme Court has stated that, "[o]nce [a] judgment [is] vacated, no part of it could thereafter be the law of the case." *Alford v. Shaw*, 327 N.C. 526, 543 n.6, 398 S.E.2d 445, 455 n.6 (1990). Since the other appeal to this Court was interlocutory, there were no rulings of law which could become the law of the case. In short, the law of the case doctrine is inapposite here. The critical issue is that plaintiffs failed to satisfy the procedural requirements of the Federal Vaccine Act and therefore cannot bring a valid state action. The legislative history, rules of construction, and the decisions of other jurisdictions that have faced this question overwhelmingly support our decision.

## Conclusion

The test for a valid State vaccine-injury compensation action is not, as plaintiffs suggest, "whether plaintiffs have exhausted their remedies before the U.S. Court of Federal Claims," or "whether they were successful" in that litigation. Rather, the test under 42 U.S.C. § 300aa-10 *et seq.* is whether plaintiffs filed a federal petition in a *timely* manner, exhausted their remedies, and elected to reject the resulting judgment before filing their state action. Otherwise, plaintiffs would be able to easily manipulate the federal and state statutory framework to avoid the mandatory program Congress established.

We note that the proper application of the Federal Vaccine Act and its limitation period may produce harsh results where claimants with even the clearest and most legitimate claims file their federal petitions too late. However, in setting the 36-month limitation period, Congress was well aware of the unfortunate effects childhood vaccines have on several children each year. H.R. Rep. No. 99-908, at 4, *reprinted in* 1986 U.S.C.C.A.N. at 6345 ("While most of the Nation's children enjoy greater benefit from immunization programs, a small but significant number have been gravely injured."). Despite full awareness of the fact that many legitimate and heart-wrenching claims would thus be barred, Congress ultimately decided that the need to foster stability and predictability in the vaccine market by protecting vaccine manufacturers from exposure to stale claims outweighed the harsh results caused by denial of relief in a few cases. *Id.* at 7, *reprinted in* 1986 U.S.C.C.A.N. at 6348 ("[T]he withdrawal of even a single manufacturer would present the very real possibility of vaccine shortages, and, in turn, increasing numbers of unimmunized children, and, perhaps, a resurgence of preventable diseases. . . . [O]nce this system is in place and manufacturers have a better sense

of their potential litigation obligations, a more stable childhood vaccine market will evolve.").

Because the Full Commission erred in its interpretation of the federal and state statute of limitations periods in its 29 August 2005 Decision and Order, the findings of which are incorporated in its 6 May 2009 Decision and Order, this Court must reverse. Having so held, we need not address the parties' remaining assignments of error.

Reversed.

Chief Judge MARTIN and Judge ERVIN concur.